COOKSEY v. JORDAN et al.

(Court of Civil Appeals of Texas. Austin. Oct. 25, 1911. Rehearing Denied Nov. 22, 1911.)

1. COURTS (§ 121*)—JURISDICTION—AMOUNT IN CONTROVERSY—SET-OFF AND COUNTERCLAIM.

Under Rev. St. 1895, art. 755, authorizing counterclaims, and article 1260, providing that right to be heard thereon shall not be prejudiced by dismissal of plaintiff's suit, it is immaterial to a defendant's right to recover on the counterclaim that the amount thereof is less than would be within the court's jurisdiction as an original cause of action.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 121.*]

2. CONTRACTS (§ 278*)—PERFORMANCE OF CONDITIONS.

Defendant, being indebted to plaintiff, H. was authorized to sell defendant's manufacturing plant for $5,500; H. agreeing to pay plaintiff $1,250 on selling the property at such price. H. negotiated with defendant for an exchange of properties in which the plant was not valued, but the trade was rescinded. Held, that H. was not liable on his promise to pay plaintiff $1,250.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 278.*]

3. COSTS (§ 10*)—AGREEMENTS. .

It was agreed in a contract between plaintiff, defendant, and H. that, if H. should be made a party to any suit thereon, the party in fault should be responsible to him for his attorney's fees and costs. Plaintiff sued on a note from defendant not concerning H., as well as against H. on his promise to pay $1,250. Defendant was in default as to the note, and H. was wrongfully made a party. Held, that plaintiff, and not defendant, was liable for H.'s attorney's fees and costs.

[Ed. Note.—For other cases, see Costs, Dec. Dig. § 10.*]

Appeal from District Court, Navarro County; H. B. Davis, Judge.

Action by J. B. Cooksey against J. G. Jordan and another. From the judgment, plaintiff appeals. Affirmed.

R. S. Neblett, for appellant. Treadwell & Tarver, for appellees.

### Findings of Fact.

JENKINS, J. J. G. Jordan was indebted. to J. B. Cooksey in the sum of $5,000, for which Cooksey held Jordan's note, secured by a vendor's lien on certain lands. Jordan paid $2,000 of the debt. Jordan was the owner of some bottling works in Corsicana, which were exempt from forced sale. Cooksey and Jordan entered into a written agreement, whereby W. M. Huggins, a land agent in Corsicana, was authorized to sell the bottling works for the sum of $5,500, and, in the event he did so, he was to have 10 per cent. commission for making said sale, and was to pay Cooksey from the proceeds of said sale the sum of $1,250, and, upon the same being done, Cooksey was to credit Jordan's note with $1,500. Huggins was also authorized to form a joint stock company to take over the bottling works, capital stock to be $5,500, and, in the event he did so, he was to pay Cooksey $1,250 upon the terms above mentioned. This agreement was presented to Huggins, who had prior to that time been authorized to sell the bottling works for the sum of $5,-500. He agreed to said contract provided that in no event was he to be made responsible for anything beyond the $1,250, and then only in the event that he sold said property for $5,500; and it was especially provided and agreed upon that, in the event litigation should arise out of said contract and Huggins should be made a party to such suit, the party in fault was to be re-

sponsible to him for his attorney's fees and costs incurred by reason of such litigation. Huggins attempted to sell said property, and also tried to form a joint-stock company to take the same over, but was unable to do either. The bottling works were mortgaged for perhaps something like their value. After failing to find a purchaser for the bottling works, Huggins made a trade with Jordan, whereby he sold him a third interest in a tract of land owned by Huggins, and which he desired Jordan to cultivate as a truck farm. As a part of the consideration for the sale of this land to Jordan, Huggins agreed to take the bottling works subject to the mortgages on the same, but not assuming the payment of said mortgages. Huggins made an effort to get an extension of these mortgages until the summer season of the following year, and, had he succeeded in doing so, the bottling works would have been of some value; but they would not pay expenses during the fall and winter season, which was the time that Huggins agreed to purchase the same. He failed to get an extension on the mortgages, and, Jordan failing to pay the balance due on the land which he had contracted to purchase, Huggins took his land back and reconveyed the bottling works to Jordan. They were sold under the mortgages, and did not bring the amount for which they were mortgaged.

Cooksey brought this suit in the district court of Navarro county, alleging that Huggins had agreed to sell said property, and that, in the event of a sale by him or by Jordan, Huggins was to pay Cooksey the sum of $1,250; that he had purchased said bottling works himself, knowing the conditions of the contract above referred to, and had become liable for said sum of $1,250. When the case was called for trial, Huggins demanded a severance, which was granted, and Cooksey took judgment against Jordan for the balance due on said note, $3,000, with interest and attorney's fees and a foreclosure of his vendor's lien. Cooksey amended as to Huggins, alleging in substance as above set out, and other allegations not necessary to be referred to. Huggins, in addition to a general demurrer and general denial, set up the contract, alleged that he had been wrongfully sued by Cooksey, and asked that he be allowed his reasonable attorney's fees, which he alleged to be $400. After the evidence was all in, Cooksey asked that he be allowed to take a nonsuit. Huggins resisted this as to his plea in reconvention, and the court, trying the same without a jury, rendered judgment in favor of Huggins for the sum of $150 attorney's fees in the event the case was not appealed, and for the sum of $250 attorney's fees in the event of an appeal. Appellant, Cooksey, has appealed the case as against Huggins, and assigns as error, in

substance: (a) That the court had no jurisdiction to try the case, inasmuch as Huggins' plea in reconvention was for a less sum than $500; (b) that Huggins was bound under said contract to pay him the sum of $1,250; (c) that Jordan, and not Cooksey, was the party in fault, and that, if Huggins was entitled to recover attorney's fees as against anybody, it was against Jordan, and not against appellant; (d) that said contract was unilateral, in that it did not bind Huggins to do anything, and therefore was not enforceable by Huggins against appellant.

### Opinion.

[1] 1. When a party is sued he may plead in reconvention for any counterclaim "founded on a cause of action arising out of or incident to or connected with plaintiff's cause of action." Title 22, Rev. Stat. "Where defendant has filed a counterclaim seeking affirmative relief, the plaintiff shall not be permitted, by a discontinuance of his suit, to prejudice the rights of the defendant to be heard on his counterclaim." Article 1260, Rev. Stat. In such case it is immaterial that the amount of the counterclaim is less than would otherwise be within the jurisdiction of the court. In Railway Co. v. Miller, 38 S. W. 1132, the court said: "It is contended by the appellant that the counterclaims * * * were less than $500, * * * and, after excluding the claim for exemplary damages, the district court is without jurisdiction to try them. This contention cannot be maintained. The petition of appellant for injunction gave the court jurisdiction. * * * Having obtained jurisdiction, the court retained it for the purpose of determining the whole controversy between the parties germane to the original cause of action." Chambers v. Cannon, 62 Tex. 295; Logan v. Loan Ass'n, 8 Tex. Civ. App. 494, 28 S. W. 141; Ablovitch v. Bank, 95 Tex. 433, 434, 67 S. W. 79, 881; Eckford v. Knox, 67 Tex. 205, 2 S. W. 372. Under these authorities it is clear that the court did not err in holding that it had jurisdiction to try appellee's plea in reconvention.

[2] 2. Inasmuch as Huggins did not agree to pay Cooksey any amount unless he succeeded in selling the property or forming a joint-stock company to take over the same for the sum of $5,500, and inasmuch as Huggins, after making proper effort, was unable to sell said property for said amount, we hold that he was not indebted to Cooksey in any amount. Even should the deal which he made with Jordan amount to a sale of the property by Jordan to him, it was not for the sum of $5,500. Huggins says that in the deal with Jordan he did not value the plant at anything, and did not hope to get anything out of it unless he could run it the next season. There is no

evidence in the case to the contrary. The evidence shows that at the time Huggins undertook to sell the property, as per the agreement above referred to. he knew nothing as to the value of said bottling works.

[3] 3. As to the suit against Jordan, he was in fault in not paying the $3,000 and interest due on his note; but a suit upon this note in no wise involved Huggins. The suit, in addition to being a suit upon the note, was a suit against Huggins upon the contract above referred to, and Cooksey alone was at fault in making Huggins a party to said suit; and hence, if the contract is enforceable in behalf of Huggins, he was entitled to recover of Cooksey his reasonable attorney's fees, by reason of his being wrongfully made a party to said suit. The evidence shows that Cooksey had no cause of action against Huggins, and hence he was neither a necessary nor a proper party to Cooksey's suit against Jordan.

4. The contract was not unilateral in that Huggins agreed that, if he could sell said bottling works for $5,500, he would become responsible to Cooksey for the sum of $1,250. Cooksey alleged in his petition facts, which, if true, would have made Huggins responsible for this amount, and the contract could have been enforced against him. It was necessary for him to defend this suit in order to rebut the existence of such facts, and hence, under the contract that if he was sued he should recover his attorney's fees from the party wrongfully making him a party to such suit, said contract was enforceable to the extent of recovering his attorney's fees.

5. The form of the judgment in this case has not been assigned as error, but appellant insists that the same is fundamental error, in that the judgment is uncertain and makes the amount thereof contingent upon appellant's appealing the case. The judgment is not necessarily void, because it is made to depend, in whole or in part, upon the happening of a contingency, if it is capable of being certainly known when said contingency happens, if at all. For instance, in the case of money being paid into the registry of the court for the benefit of a minor heir, the judgment may recite that the clerk will pay said money over to the legal representative of such minor heir when such representative shall be appointed and legally qualify. The effect of the judgment in this case is that $150 is a reasonable attorney's fee for services already rendered, and that $250 is a reasonable attorney's fee if the case is appealed, and appellee is thereby compelled to pay his attorneys a reasonable amount for their additional services. Whether or not an appeal is perfected in this case is a matter that can be known with certainty to the clerk, and upon the happening of said event he is instructed by the judgment to issue execution against appellant for the sum of $250. We do not think that this is such fundamental error, if error at all, as would require a reversal of the case without said judgment being called in question by an assignment of error.

For the reasons above stated, the judgment herein is affirmed.

Affirmed.